The final case scheduled for argument this morning is No. 20-4162, United States v. Chairs. Robert Boyle May it please the Court, my name is Robert Boyle and I represent Robert Chaires. Good morning, Your Honors. Good morning. Procedural error was committed here when the lower court adjudicated Mr. Chaires a career offender. Appellant's two New York State convictions under New York D.L. 220.39 were not controlled substance offenses. As that term is defined in United States Guidelines, Sentencing Guidelines 4B1.2 in this Court's decision in Townsend. 220.39 is an indivisible. Could you first address the forfeiture argument? I mean, the government is claiming that this is on plain error review because the question was inadequately preserved below. And the only reference we see to the kind of categorical approach argument you're making now is in the August 31, 2020 submission, which is the objection to a Section 851 enhancement, which kind of mentions controlled substance, not a qualifying controlled substance. And if the Court decides to go forward on that approach, it has to follow the categorical approach. But that seems like a very oblique way of raising the kind of arguments that you're making now. I'm not sure that the district court had a reasonable opportunity to treat this as an objection of the type that would be necessary to preserve it and shelter it from plain error review. Can you explain why that was enough to preserve the argument now? Yes, Your Honor. Rule 51 requires that the party make an objection so that the claim is apparent to the district court. In this particular case, Mr. Charez, his counsel below, made the very specific argument here that the Court must undertake a categorical approach when determining whether he could be sentenced as a career offender. What Mr. Charez did here, I think, is a lot more than what this Court has sanctioned as a sufficient objection. If we thought that it was plain error review, do you think that there was plain error here? Excuse me? If it was plain error review, do you think that there was a plain error here? Well, not at this point. We have some – there are some cases in the pike here which raise the exact same issue. A plain error would be error at the time of appellate review. We have in the pike in this Court the Gibson case, the Johnson case, and Gibson in particular. There's no preservation issue there because it's a government appeal. And, in fact, if this Court was inclined not to find that he properly preserved the issue, we would request that it defer ruling to see what happens at Gibson. Because if Gibson prevails, it is plain error because it's at the time of appellate review. But at the time the district court made the decision, you don't think that it's plain error because it hasn't been resolved, this issue? I would concede that the law was unsettled at the time of the district court. So if there were no Gibson, if this were the only game in town, you seem to be suggesting that you'd lose on plain error review. Oh, Your Honor, I would still certainly make an argument that he could satisfy under Townsend in particular. I thought that that's what Judge Menasche asked you, and you said not at this time. Well, in light of, for example, this Court's decision to Lucas, which is a recent case impending in Johnson, we have a difficult time applying, achieving harmless error on these particular facts. But we do have Gibson, which is a preserved issue, and whichever way that comes down, if it comes down in Mr. Gibson's favor, it is plain error here. The error would be plain under United States v. Henderson because it was at the time of appellate review. We certainly could show violation of substantial rights here because the ruling of the court essentially almost in a great way significantly enhanced his sentence. So can I ask you about your argument on the guidelines? So the guidelines says the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. It talks about a prior conviction. Doesn't that naturally be read? Wouldn't that naturally be read to indicate a controlled substance offense at the time of the prior conviction? No, Your Honor. To determine whether it's a controlled substance offense in terms of the guideline, both 18 U.S.C. 353A and some subdivisions say apply current law to the sentencing range. We then have We apply the current sentencing guidelines, right? Yes, which is what Under your interpretation, can something that wasn't previously a controlled substance offense become one? So if the Congress adds naloxone back onto the controlled substances list, then if you were convicted between 2015 and 2021, it wouldn't have been a controlled substance offense at the time, but at the time of sentencing it would be if you were sentenced after that period, right? So you're saying things can become a controlled substance offense, too? The comparison occurs at the time of sentencing. So if naloxone is not in the Controlled Substance Act at the time of sentencing, Right. So you could be convicted under something that wasn't considered a controlled substance offense at the time, but at the time of sentencing it could be, and all of a sudden you have two prior convictions for a controlled substance offense whereas you wouldn't otherwise. Well, in fact, something similar occurred in the United States v. Westcott. Can I ask you this? So if a defendant was convicted under the Federal Controlled Substances Act before 2015 and then sentenced after, you'd also say that that person was not a career offender, right? Yes, I think the same analysis would apply. So then you're saying we're applying the categorical approach to convictions under the same statute. So normally we apply the categorical approach to see whether the state statute matches the federal one, but then you're also saying because the federal statute has changed, you apply the categorical approach to determine whether an earlier conviction under the Federal Controlled Substances Act is a match for the later Controlled Substances Act. That's a very weird phenomenon, wouldn't it be? You're actually committed under the same statute, and yet we're saying it would not be a controlled substance offense. You have to do a categorical analysis of the same statute at two different points in time. The career offender guideline makes no distinction between a state and federal conviction on its face. It just says two prior controlled substance offenses. No, I know, but usually the point of the categorical approach is to determine whether the state statute fits within the federal category. But the logic of your argument is we have to do the similar analysis for the federal statute itself if it gets amended because we're going to compare a conviction under the federal statute at time one to a sentencing under the exact – a sentencing at time two, and so we're going to evaluate whether the same statute at time one categorically matches the same – that statute at time two. You see why that's odd? Your Honor, I can see how – I can see how it's odd, but, however, that's not the case here, of course. No, I know. If we adopt your argument, I think you just acknowledge that it would have that implication. We – it could happen in the – it could happen in the future. That's certainly not the case here. And one point I want to make about this, it doesn't mean that the prior conviction, be it a state or federal, goes away. The defendant is still subject to the criminal history points. A lower court can decide that the defendant's criminal history can depart upwardly or in terms of criminal history category, and obviously it can be taken into account when evaluating the 3553A factors. Well, that kind of leads to, I guess, your third point, which is that this is a substantially unreasonable sentence. I mean, you seem to just suggest that even if this is not a – these prior convictions are not controlled substances offenses, these – certainly the judge can consider these things, recognizing that the drug in question has nothing to do with the prior conduct, and that would be relevant to sentencing, right? It certainly would be relevant to – In 120 months? The – everything is almost relevant to sentencing, facts and law. In this particular case, the – if he was not a career offender, I believe the guidelines were 60 to 71 months. If – since he was adjudicated as a career offender, it was 155, I think, to 185 months. So the difference is enormous. Right. So if the sentencing judge – if the sentencing judge had said, look, this is a tricky question because the categorical approach is frankly ridiculous and hard to follow and so metaphysical as to almost not be helpful. But if it is not – if these are not prior convictions, I still think 120 months is appropriate given that prior conduct. It would – this would still be, in your view, a substantially unreasonable sentence? Well, yes. You would start with what the guidelines are, and the guidelines go to the top of 71 months. No, no. Well, that would – right. And certainly when this Court has looked at what is substantially unreasonable or reasonable, the guidelines are the benchmark. Right. And so in this case – So if the judge had said, okay, I recognize the possibility that the guidelines, if these are not – if these are not prior convictions for the career offender provision, that the guidelines would be 71 to whatever. I'm going to depart upwards to 120 because I think that notwithstanding this technical argument on career offender, this is really bad conduct, and I think 10 years is appropriate. Your view is that would be still substantively unreasonable? That would, in my view, be substantively unreasonable given that his guidelines would – if the career offender doesn't apply, was something like, I think, 60 to 71 months. And the benchmark for evaluating whether it's reasonable or unreasonable starts with the guidelines. So in Your Honor's analogy, the career offender would be out the door, but the defendant would be – But if the judge said only by a technicality is it out the door, and so I'm going to – in terms of culpability and risk of recidivism and all the other things that are relevant under 3553A, there's no difference. Whether naloxone is covered or not covered or when it should be considered has nothing to do really with the risk of recidivism and the moral culpability of a guy being back again for the third time. The Court has – certainly has enormous discretion in sentencing. The issue here is whether we start at a guideline range of something like 155 to 185 months and move – or a guideline in terms of 60 to 71 months. So if the Court could justify its sentencing if there was an upward variance, as it were, but still on evaluation in this Court, it would be – was that upward variance justified by the facts of the case and by the guidelines as determined by the Court? In any event, the judge here didn't make this sort of alternate holding or state an alternate basis to get to 120 months, right? No. It certainly did not. There was a downward variance. But, once again, it would be a significant upward variance had the career offender guideline not applied. It would have been from 71 way up to 120. Right. Thank you. Thank you very much. You've reserved a couple minutes for rebuttal. We'll hear from the government. May it please the Court. Karina Schomburger for the United States. Mr. Chair, sentence should be affirmed. The central argument in the case absolutely should be reviewed under the plain error standard. This argument about the categorical application to the two prior convictions here was not raised in the district court. Well, wait a second. So it was mentioned, right, in the objection to 851. He says that the 2009 conviction of attempted criminal sale is not a qualifying controlled substance offense, and the alternative, you know, if the court determines it can make that determination, has to follow the categorical approach. It's kind of gesturing, but it's mentioning the right words. Why wasn't that enough? Because that was in reference to the 851 information. That objection was made in August of 2020 before there had been any determination that this defendant was a career offender. That didn't happen until the PSR was disclosed in November of 2020. Thereafter, Mr. Chair has had an opportunity to submit a sentencing memorandum and to speak at length at a sentencing hearing, and in neither place did he raise the argument that he didn't want to deal with that. Well, usually we say that a guidelines miscalculation is a plain error, don't we? Is a plain error? Like if the district court just miscalculated the guidelines and started from a sentencing range that's just erroneous? Well, certainly we wouldn't object that there is prejudice when there is a miscalculation of the guidelines. That's a procedural error. But whether or not it's plain depends on the circumstances here. It certainly wouldn't have been because there was no controlling law on the questions that are raised on the appeal here. And again, not raised below, and the district court didn't have the benefit of a record that you would need to answer some of the complicated questions here with respect to what the New York state drug schedules consider to be controlling. But, I mean, there are these other cases that have already been argued. And so if Gibson comes out tomorrow and concludes that time of sentencing is the way to go, and that, perhaps, I don't know, but if that were the case, would that alter your argument too? It would not dispose of the case because it wouldn't respond to the argument about whether or not there is a mismatch between the New York and the federal schedules. Because, as the government argues in its papers, even if you were to apply or refer to the federal schedules as of the day of sentencing, that does not mean that there would be a mismatch between the two schedules because it's not clear that New York considers Naloxone to be an opium derivative. So that's your fallback argument that they would have to demonstrate that there actually have been prosecutions for possession of Naloxone. That's right. Because there's an ambiguity that the appropriate test to apply is the reasonable probability test. But why is there an ambiguity there when the language completely tracks what the federal schedule was? The federal schedule was clearly deemed to include Naloxone. Why wouldn't that mean that the state analog is the same? Because New York isn't bound by what the DEA considers to be a derivative. It's an undefined term. So what do we have to look to? We have to then just sort of canvas all prosecutions in New York for drug offenses under that provision? Well, if we're talking about the reasonable probability test, I mean, certainly there has to be some sort of showing that there is a reasonable probability that this would be prosecuted in New York. One way to do it is to look at the— But wouldn't you be arguing, in essence, that although New York chose the exact same language as the federal statute, they actually intended it to be different before the DEA took Naloxone off of the schedule? Well, so I'm not sure that the language is completely tracked and that the explanation for why it was removed from the federal schedules doesn't also completely align with what's in the New York schedules. And you can even see in the papers submitted by the parties here that in the reply brief, there's an explanation from the DEA about in 2014 when it was proposed that Naloxogol would be removed from the schedule, about why that was. And they said that it was synthesized from an opioid antagonist derived from Thebane. And then the government quotes from the DEA announcement when, in fact, it's excluded from the schedules and says that the reason that it was previously scheduled was because it can be derived from opiate alkaloids. A number of these words come up in the New York schedules, but it's not clear exactly that Naloxogol would have been controlled. And again, we don't have a record here to fall back on to look at how New York actually treats this substance, which is a constipation medication. I know that that has been briefed in the pending Johnson case. But in addition, Judge Sullivan, to looking at whether or not this has been prosecuted, you can also look to see how New York State treats this actual substance. And again, we don't have the record here, but there is indication that it's not controlled here. It's part of Medicaid's preferred prescription, but there's no direction to doctors to treat it as a controlled substance. So, again, I don't think it's completely a canvas of all possible prosecutions, but a realistic test about whether or not there's a problem. And should we conduct that analysis on appeal? Pardon me? Should we conduct that analysis on appeal? What would we do with it? I mean, that's something that should be developed in front of a fact finder. So we would still have to decide the antecedent question about what the guidelines require before we get to whether this analysis applies, right? Or you're saying we should send it back to district court to determine. Well, regardless of the time the guidelines applies, naloxidil might not be on the schedule, and so the district court should have done an inquiry into that. So this shouldn't be sent back to the district court at all, because there wasn't an error here, much less plain error. But to the extent that— But to the extent that this argument you're making about whether naloxidil really was a controlled substance under New York law, let's say we're just focused on that argument and that's the one argument, what's the disposition of the case if we were persuaded by that argument and only that argument? If the court found on this record that it could make that determination, then perhaps the case could be disposed of. But the appropriate outcome here is to find that there was no plain error, and to the extent this question needs to be answered— No, I understand, but you kept saying, well, we don't know because there's no record here. So I'm just curious if we were— If we were persuaded by this argument and not the other ones, what would the disposition of the case be on appeal? The question should be answered in a case where there is a record before the district court. And right now the other— So you're saying that's like a reason why we should say there's no plain error and look for a future case with a more developed record to determine the main issue about the guidelines interpretation? That's correct. So the idea that naloxonol isn't controlled under New York State law is not an independent basis for affirming the judgment here. It's only like a supporting argument for the plain error argument. And to respond to the question about how the reasonable probability test would apply in a case like this one. Okay. And with respect to the timing here, that is a question that may be resolved by the Gibson case. There's a split across the country. You know, there's been published cases that find that the time of sentencing is the appropriate time to look at. Well, look, we've kind of already ruled on this, but in a different context, right? In an INA context. That's right. And several courts have attempted to articulate a distinction between that context and this one. So maybe that's where you should be focused. Well, that's correct. In the Doe v. Sessions case, this court applied the time of conviction standard in the immigration context. And although, you know, it can be distinguished on that ground, this core of its reasoning would apply here, which is you're looking at the relevant hook, which is, in this case, the prior conviction. And you are looking for what happened at the time. And that's because the reason there is a career offender guideline at all is because the guidelines explain that people that have prior convictions are more culpable and deserving of more punishment. And so even if we were to imagine, and there's no reason to think that Mr. Chares was selling Naloxonol, but even if we were to assume that he was selling Naloxonol in 2003 and 2008, at the time that there was indisputably no mismatch between the schedules, then that shows he broke the law. And it becomes a matter of line drawing. And you want to draw the line at the point that tells you something about the defendant's likelihood of recidivism. And I know that the court is somewhat hamstrung by the categorical approach. We aren't able to look at facts. But for that reason, it's even more important to choose a line that actually reflects, again, the relevant hook, which is whether there's prior convictions that show someone is deserving of more punishment. And briefly, I'll just turn to the substantive reasonableness of this particular sentence. It was a below-guideline sentence. I understand the argument that if the career offender guideline did not apply, it would be a lower guideline range. But when the court is conducting a 3553A analysis, it is not precluded from considering the facts the way it is in the categorical approach. And so in a case like this, even if it were defined as a tactical matter, that it couldn't apply the career offender guideline, it would have been appropriate to sentence this defendant as if he were a career offender, again, because the facts show that the types of crimes he committed were controlled substances offenses. But if the district court – if we find the district court made a mistake in calculating the applicable guidelines range, why wouldn't we remand for resentencing? I mean, it's not as if every factor is spelled out exactly how the district court calculated them. It would be – If there is an error – yes, I mean, if there is an error in calculating the guidelines range, then it is appropriate to remand, and then the court can – Well, that's a procedural – Exactly. – error thing, right? Right, right. So if there's not a procedural error, and we're turning to whether there's a substantive error, here there was not. Again, it would have been appropriate to sentence this defendant within the range that was applicable to career offenders. But, in fact, the district court sentenced him below that range. 120 months reflects the mandatory minimum on the two counts that he was convicted of and falls within the range of permissible decisions, and for that reason should be affirmed. Thank you. Mr. Boyle, you have two minutes of rebuttal. Thank you, Your Honor. Very briefly, I wanted to correct the – what's happened here procedurally. This is a case where there was no plea agreement prior to the plea proceedings. The day before the actual plea, the government filed what was called an offer of proof to which they asserted that the statutory enhancement be given to Mr. Cherez and also that he would be a career offender. And that was repeated, and I'm referring to page 27 of my appendix, where the prosecutor states he would be – that he might be adjudicated a career offender. So when counsel on the same day or the day prior filed that piece of paper, he objected to the career offender guideline being used in this case. So it's not something that was out of the blue. That he didn't then again raise it orally at sentencing is insignificant because that's not necessary. And I cite, I believe, it's to the Fernandez case in my brief where this Court held that it's not necessary to repeat orally at sentencing if you made your objection in writing. Well, but there are a couple of different grounds for an objection, right? I mean, there's a potential objection because of the argument that the prior convictions don't count because of the nulloxical issue. And then there's another issue, which is whether an attempt is covered. If you only articulated one, your view is that that's good enough to cover both? It's good enough to cover both if there is also a written objection, which is more specific. And in this case, there was because he objected in his written submission by stating that the Court has to use the categorical approach when deciding whether the prior convictions are controlled substance offenses. That has nothing to do with the issue of being co-ed. I'm sorry. But the only stated substantive ground was the conviction for attempted criminal sales not being qualifying. And then there's a separate paragraph that just refers to you have to follow the categorical approach in deciding what documents you can look at. Judge Sullivan is pointing out that didn't really focus on the drug schedule mismatch potentially, right? Your Honor, it didn't necessarily focus on the drug schedule mismatch. But if the Court had applied the categorical approach, it would have had to look at the drug schedule match-ups. And by making that very specific objection, it puts the burden on the government to show that the enhancement is or was appropriate, which is it's their burden. I will point to some of the cases in my brief, particularly Zavella, where counsel got up and said, I object to the enhancement. This Court said that was sufficient to preserve an objection to insufficient findings. And Ms. Gutierrez did so much more than that here by mentioning the terms categorical approach, putting it in writing. But your view, I think, is, tell me if I'm wrong, that by invoking the law with respect to categorical approach, you have preserved every conceivable argument that implicates the categorical approach. Is that your view? Because it would be the government's burden to show that under the categorical approach, the prior convictions count under the guideline? It's always the government's burden. Whether every conceivable thing is at issue depends on the facts of the particular case. Here, if the categorical approach was followed, the Court would have had to reconcile the issue that Naloxone is criminalized in New York State. The categorical approach includes attempts. I mean, that's an argument that we've already foreclosed, but other circuits and other courts may have come out differently on. If your written statement only refers to the categorical approach in connection with whether attempts are covered, your view is that's still enough to include and preserve your appeal on the Naloxone statutory mismatch, as Judge Carney described it. That's your view, right? In this particular case, yes. Okay. Thank you very much. I think we have the arguments. We will take the matter on submission. That concludes our calendar for oral arguments this morning. The Court will please adjourn the Court. The Court is adjourned. Thank you.